IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MYRTLE DUPREE, § § Plaintiff, § § V. § § TOM POWERS AND RUSHMORE § LOAN MANAGEMENT SERVICES, § LLC § § Defendants. § | No. 3:23-cv-1479-N-BN (consolidated with No. 3:23-cv-1480-N-BN) |

**MEMORANDUM OPINION AND ORDER REOPENING CLOSED CASE, DENYING COURT-APPOINTED COUNSEL, AND REQUIRING BRIEFING**

Appellant Myrtle Dupree ("Ms. Dupree") appealed two rulings of the United States Bankruptcy Court for the Northern District of Texas.

Both rulings appear to be the United States bankruptcy judge's decision to dismiss Ms. Dupree's bankruptcy case and the related adversary proceeding because Ms. Dupree failed to comply with the bankruptcy court's order to retain new counsel. *See* -1479, Dkt. No. 1-1 at 5; -1480, Dkt. No. 1-1 at 4.

The appeals were consolidated, and Chief United States District Judge David C. Godbey referred the consolidated appeals to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b).

After carefully considering the April 15, 2025 amended joint status report [Dkt. No. 47] ordered by the Court, *see* Dkt. Nos. 45 & 46, the Court REOPENS this administratively closed case, DENIES Ms. Dupree's current request for court-appointed counsel as to the appeals, and ORDERS the parties to file briefing to

further the district court's disposition of the Ms. Dupree's appeals from the bankruptcy court, as further explained below.

## Applicable Background

The undersigned entered findings of fact and conclusions of law recommending that, because the Court repeatedly warned Ms. Dupree of possible dismissal for failure to comply, the Court should *sua sponte* dismiss the consolidated appeals without prejudice under its inherent authority and Federal Rule of Civil Procedure 41(b) based on Ms. Dupree's failure to comply with the Court's orders and to have counsel appear on her behalf and the Court should deny as moot Appellee Rushmore Loan Management Services, LLC's Motion to Dismiss for Want of Prosecution [Dkt. No. 23] (the "FCR").

Based on Ms. Dupree's response to the FCR, *see* Dkt. No. 24, Chief Judge Godbey re-referred this matter to the undersigned to consider what, if any, effect those objections have on the FCR and to enter appropriate orders or recommendations, *see* Dkt. No. 25.

The Court then directed Rushmore to respond to Ms. Dupree's objections, including her arguments regarding appointing a guardian *ad litem* and/or an attorney. *See* Dkt. No. 26.

After reviewing the objections and Rushmore's response [Dkt. No. 28], including its argument that an individual other than Ms. Dupree or her son, Alfred Dupree ("Mr. Dupree"), filed the objections, the Court set this matter for an in-person hearing, *see* Dkt. Nos. 29 & 30.

Mr. Dupree, Appellee Tom Powers, and Rushmore's counsel attended the hearing on September 19, 2024. *See* Dkt. No. 31.

At that hearing, Mr. Dupree informed the Court that he has a durable power of attorney over Ms. Dupree, who he characterized as having some capacity issues; that Ms. Dupree defers to Mr. Dupree to take care of matters for her; that he has at least informally served as her representative; that, as to some filings in this matter, he prepared them with assistance from other individuals who are not attorneys; that the family lacks funds to retain an attorney; and that he would like the Court to appoint an attorney *ad litem*.

Rushmore represented that it would not oppose the Court granting that request and informed the Court that at least one individual who assisted Mr. Dupree has taken advantage of elderly individuals, like Ms. Dupree, and that this proceeding (including presumably in the bankruptcy court) has been riddled with competency and capacity concerns.

Mr. Powers also stated that he would not oppose the appointment of someone to look at this case on behalf of Ms. Dupree.

After the hearing, Mr. Dupree submitted a financial affidavit on behalf of Ms. Dupree, as the Court ordered. *see* Dkt. Nos. 32-34, & 37.

Considering this background, the Court withdrew the FCR and granted Ms. Dupree leave to proceed *in forma pauperis* through an order entered on February 27, 2025 [Dkt. No. 45]; that order also administratively closed this case to allow an opportunity to sort out specified issues and required the parties who attended the

September 19 hearing to meet and confer and file a joint status report.

## Discussion

### I. The Court denies Ms. Dupree's request for court-appointed counsel as to her appeals from the bankruptcy court.

As clarified at the September 19 hearing, although the term was used in filings purportedly made by Ms. Dupree, appointment of a guardian *ad litem* is not sought, just a court-appointed attorney (or attorney *ad litem*).

> The roles of a guardian ad litem and an attorney ad litem differ, and we must consider each separately. A guardian ad litem is, in a sense, an officer of the court. "[He] is not simply counsel to one party in the litigation, but instead plays a hybrid role, advising one or more parties as well as the court." As one court explained, "[T]he [incompetent person] is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done him. The guardian ad litem is appointed merely to aid and to enable the court to perform that duty of protection." An attorney ad litem, in contrast, serves no special function. He performs the same services as any attorney – giving advice, doing research, and conducting litigation – only for [an incompetent person] rather than for [a competent one].

*duPont v. S. Nat'l Bank of Hous., Tex.*, 771 F.2d 874, 882 (5th Cir. 1985) (citations omitted); *see also Gibbs v. Gibbs*, 210 F.3d 491, 506 (5th Cir. 2000) ("[T]he guardian ad litem acting in the capacity as an attorney for the minor is in no better position than an attorney retained by any litigant under normal circumstances." (citing *Kollsman v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993))); *Kollsman*, 996 F.2d at 706 ("The guardian ad litem's presence is necessitated by the litigation and it is his duty to determine policy regarding litigation. The guardian ad litem is frequently not an attorney and if legal services are required, he must seek and employ counsel. Counsel

obtained thereby on behalf of a ward or incompetent is in no different circumstance from counsel for any other litigant." (citations omitted)).

And, "[a]s a general matter, 'a federal court cannot appoint a guardian *ad litem* in an action in which the infant or incompetent already is represented by someone who is considered appropriate under the law of the forum state.'" *Rice ex rel. CIR v. Cornerstone Hosp. of W. Monroe, L.L.C.*, 589 F. App'x 688, 691 (5th Cir. 2014) (per curiam) (quoting 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1570, p. 665 (2010); citing *T.W. & M.W. by Enk v. Brophy*, 124 F.3d 893, 895-96 (7th Cir. 1997)).

This tracks Federal Rule of Civil Procedure 17(c)(1), which provides a list of representatives who "may sue or defend on behalf of a minor or incompetent person": "a general guardian"; "a committee"; "a conservator"; or a "like fiduciary." FED. R. CIV. P. 17(c)(1).

But Rule 17(c) further "empowers a federal court to appoint a next friend if the [incompetent person's] legal representative is unable or refuses to act." *CIR*, 589 F. App'x at 691 (quoting *Susan R.M. by Charles L.M. v. Ne. Indep. Sch. Dist.*, 818 F.2d 455, 458 (5th Cir. 1987); citing *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir. 1989) (Rule 17(c) "gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent.")); *accord Gaddis v. United States*, 381 F.3d 444, 453 (5th Cir. 2004) (en

banc) ("It is clear in this Circuit that Rule 17(c) authorizes and mandates that district courts appoint a guardian *ad litem* in the situation where the interests of the [incompetent person's] general representatives … may conflict with the interests of the person … who might otherwise be represented by such general representatives." (citations omitted)).

In this regard, the record here is not exactly clear. But it does seem that Mr. Dupree may have some authority under Texas law to act on behalf of Ms. Dupree. And Mr. Dupree neither appears unable, nor has refused, to act as Ms. Dupree's representative. A conflict of interest is not apparent. Nor have the Appellees objected to Mr. Dupree acting as a representative for Ms. Dupree.

But appointment of counsel for an indigent litigant in a matter like this is easier said than done.

First, "[t]here is no absolute right to an attorney in [a civil] cases." *Nickols v. Morris*, 705 F. Supp. 2d 579, 584 (N.D. Tex. 2010).

So Ms. Dupree "has no right to the automatic appointment of counsel." *Morgan v. Richards*, No. 21-10931, 2023 WL 6121775, at *2 (5th Cir. Sept. 19, 2023) (per curiam) (citing *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987)); *see also Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) ("[A] *pro se* litigant, "even if demonstrably indigent, is not entitled to appointed counsel as a matter of right." (citing *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982))).

And a court is only "required to appoint counsel for an indigent [litigant] in a civil lawsuit [if] there exist exceptional circumstances warranting such an

appointment." *Tampico v. Martinez*, 987 F.3d 387, 392 (5th Cir. 2021) (per curiam) (citing *Naranjo*, 809 F.3d at 799).

"[F]actors that should be considered in determining whether exceptional circumstances warrant the appointment of counsel" include "1. the type and complexity of the case; 2. the [litigant's] ability adequately to present and investigate his case; 3. the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and 4. the likelihood that appointment will benefit the [parties and] the court … by 'shortening the trial and assisting in just determination.'" *Id.* (quoting *Parker v. Carpenter*, 978 F.2d 190, 193 (5th Cir. 1992)).

In sum, the Court's ability to appoint counsel for indigent individuals is limited by statutory authority, as set out above.

But that ability is also constrained by reality. That is because a judge in this federal district cannot compel an attorney to take a pro bono appointment.

As the Court set out in the February 27 order,

> while the undersigned has carefully considered the appointment of counsel for Ms. Dupree, the Court has yet to successfully persuade an attorney to take on her case.
>    But the undersigned is also not convinced that the record now before the Court reflects that exceptional circumstances exist. That is because it's not apparent that appointment of counsel would benefit the Court as to these consolidated appeals. While, at the September 19 hearing, Appellants seemed to support the notion that appointment of counsel could benefit the parties and the bankruptcy court as to the underlying proceeding, it was less clear whether appointing counsel would further this proceeding – in the district court. For example, is there a meritorious ground to reverse the bankruptcy court or, instead, should that court be summarily affirmed? As to this (and other points), the record is just not developed.

> Accordingly, the Court would benefit from hearing further from the Appellees, including Mr. Powers, the Chapter 13 Trustee….
>
> And the participants from the September 19 hearing – Mr. Dupree, Mr. Powers, and counsel for Rushmore – are ORDERED to meet and confer in person or over the phone, by **March 31, 2025**, to discuss all matters addressed above and any related matters, including a basis, if any, for the Court to appoint counsel for Ms. Dupree as to these consolidated appeals only. Counsel for Rushmore shall initiate this meeting. And, on behalf of the participants, counsel for Rushmore must file a joint status report by **April 14, 2025**.

Dkt. No. 45 at 7-9.

The amended joint status report [Dkt. No. 47] contains several paragraphs discussing a prior foreclosure lawsuit, in which a default judgment was entered against the Duprees, *see id.*, ¶¶ 4-7, but spends little time addressing the issues the Court raised, *see id.*, ¶ 2 ("While Mr. Dupree believes he has various meritorious grounds that would entitle a reversal of the bankruptcy court's rulings, neither the Trustee nor Rushmore believe the bankruptcy court should be reversed.").

And, through an email sent after the parties' meeting (and attached to the report), Mr. Dupree contends that his retention of Rufus Hampton "to represent [him] in this lawsuit" (it's unclear whether Mr. Dupree means that he retained Hampton in the foreclosure lawsuit, the underlying bankruptcy proceeding, its related adversary proceeding, or these appeals) and alleged service issues in the prior foreclosure matter support appointing counsel for Ms. Dupree for these appeals. Dkt. No. 47-1 at 2-4.

The Court cannot agree with Mr. Dupree. No arguments advanced through the amended joint status report show that exceptional circumstances warrant the appointment of counsel for Ms. Dupree as to these appeals at this time.

But the Court could consider appointment of counsel again, at a subsequent stage of this proceeding, at which point it would consider whether the facts of the case through that stage show that exceptional circumstances warrant appointment of counsel. *See, e.g.*, *Morgan*, 2023 WL 6121775, at *2 ("indicat[ing] that appointment of counsel may be required at later stages of litigation even if it was not appropriate at the motions stage" and "that the district court should [consider] the facts anew at each stage, especially the trial stage" (citations omitted)).

## II. The Court requires the parties to file briefs to address the pending appeals.

As to these appeals, the district court confronts a discrete issue: whether the bankruptcy court's decision to dismiss Ms. Dupree's proceedings for failure to follow the court's order to retain counsel was an abuse of discretion. *See Matter of Dolleslager*, 618 F.2d 322, 324-26 (5th Cir. 1980); *Dorsey v. U.S. Dep't of Educ.*, 528 B.R. 137, 147-49 (E.D. La. 2015); *Anamarc Enters., Inc. v. Diaz*, Civ. A. No. 15-0876, Bankr. Adversary No. 14-3028, 2015 WL 4658723, at *3-*5 (S.D. Tex. Aug. 5, 2015).

"Matters within a bankruptcy judge's discretion are reviewed for an abuse of discretion," and "[a] bankruptcy court abuses its discretion when it (1) applies an improper legal standard, which is reviewed *de novo*, or (2) bases its decision on findings of fact that are clearly erroneous." *Anamarc Enters.*, 2015 WL 4658723, at *3 (citations omitted; district court's reviewing, under the standards of Federal Rule of Civil Procedure 41(b), the dismissal of an "adversary proceeding with prejudice based on Anamarc's failure to comply with the Amended Scheduling Order's

requirement that it obtain 'duly authorized counsel' by" a date certain).

To the extent that Rule 41(b) applies to both dismissals, *see id.* (noting that the rule is "applicable to adversary proceedings pursuant to Bankruptcy Rule 7041"); FED. R. BANKR. P. 7041 ("Fed. R. Civ. P. 41 applies in an adversary proceeding."), a dismissal under Rule 41(b) may be with or without prejudice, *see Long v. Simmons*, 77 F.3d 878, 879-80 (5th Cir. 1996).

> Although "[l]esser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice, ... a Rule 41(b) dismissal is appropriate where there is 'a clear record of delay or contumacious conduct by the plaintiff and when lesser sanctions would not serve the best interests of justice.'"

*Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016) (quoting *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (per curiam) (quoting *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985))); *see also Long*, 77 F.3d at 880 (a dismissal with prejudice is appropriate only if the failure to comply with the court order was the result of purposeful delay or contumacious conduct and the imposition of lesser sanctions would be futile); *cf. Nottingham*, 837 F.3d at 442 (noting that "lesser sanctions" may "'include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings'" (quoting *Thrasher v. City of Amarillo*, 709 F.3d 509, 514 (5th Cir. 2013))).

While a court may not explicitly label a dismissal with prejudice, a dismissal still may operate as one with prejudice. For example, "[w]hen a dismissal is without prejudice but 'the applicable statute of limitations probably bars future litigation,'" that dismissal operates as – i.e., it is reviewed as – "a dismissal with prejudice."

*Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018) (quoting *Nottingham*, 837 F.3d at 441); *see also Wright v. LBA Hospitality*, 754 F. App'x 298, 300 (5th Cir. 2019) (per curiam) (affirming dismissal under Rule 41(b) – potentially effectively with prejudice – where "[t]he district court had warned Wright of the consequences and 'allowed [her] a second chance at obtaining service'" but she "disregarded that clear and reasonable order").

And whether a dismissal is without prejudice or, rather, either explicitly or effectively with prejudice frames the reviewing court's decision as to whether that dismissal – considering the record that supports it – qualifies as an abuse of discretion. *See Dolleslager*, 618 F.2d at 324-25 ("The established rule in this circuit is that dismissal [of an action effectively with prejudice] under [Rule 41(b)], for failure to comply with an order of the court is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interests of justice. In general, this Court has made it clear that lesser sanctions normally will suffice, and except in the most flagrant circumstances, the trial court ought not to resort to sanctions which deprive the litigant of his opportunity to pursue his claim. We must therefore determine whether the present record discloses such a pattern of delay, flagrant circumstances or contumacious conduct that no sanction other than dismissal is appropriate to serve the interests of justice." (cleaned up)); *see, e.g., Dorsey*, 528 B.R. at 148-49; *Anamarc Enters.*, 2015 WL 4658723, at *3-*5.

Considering these legal standards, the undersigned will require the parties to apply them (and all other applicable authority) to the record that was before the

bankruptcy court to prepare briefs to assist the district court's determination whether the bankruptcy court abused its discretion when it dismissed Ms. Dupree's bankruptcy proceedings, the first determination being whether those dismissals are effectively with prejudice.

A brief on behalf of Ms. Dupree shall be filed by **May 23, 2025**. And, regardless of whether Ms. Dupree files a brief, Rushmore and Powell shall file a brief by **June 9, 2025**.

The failure to comply with any part of this order may result in the imposition of sanctions, s*ee* FED. R. CIV. P. 16(f), and may lead to dismissal of this case for failure to prosecute pursuant to Rule 41(b).

## Conclusion

The Court REOPENS this administratively closed case, DENIES Ms. Dupree court-appointed counsel at this time, and ORDERS each side to file a brief to assist the district court's determination whether the bankruptcy court abused its discretion when it dismissed Ms. Dupree's bankruptcy proceedings. Ms. Dupree's brief shall be filed by **May 23, 2025**. And the Appellees' brief shall be filed by **June 9, 2025**.

SO ORDERED.

DATED: April 23, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE